UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ALEX E. MCDONALD,

        Plaintiff,

    v.

UNION PACIFIC RAILROAD COMPANY,
a foreign business corporation,

        Defendant.

Case No. 3:17-cv-01157-YY

FINDINGS AND
RECOMMENDATIONS

YOU, Magistrate Judge:

    Before the court are two motions: defendant Union Pacific Railroad Company's ("Union Pacific") motion to dismiss for failure to state a claim (ECF #14) under FRCP 12(b)(6), and plaintiff Alex McDonald's ("McDonald") motion to amend the complaint (ECF #25) pursuant to FRCP 15(a). Defendant initially filed a motion to dismiss. However, because it appeared that McDonald had failed to state a claim, the court gave McDonald leave to file a motion to amend the complaint. Both motions are now ripe for the court's consideration. For the reasons set forth below, the motion to dismiss (ECF #14) should be GRANTED, the motion to amend (ECF #25) should be DENIED, and the case should be dismissed with prejudice.

///

///

1 – FINDINGS AND RECOMMENDATIONS

**BACKGROUND**

McDonald owns real property in Multnomah County adjacent to Fairview Creek.[1] Compl. ¶ 7, ECF #1. Union Pacific owns a right of way across Fairview Creek adjacent to McDonald's property. *Id.* ¶ 8. In February 2017, McDonald observed a beaver dam approximately 50 feet long and 8-to-10 feet high situated directly underneath Union Pacific's railroad trestle. Alex McDonald Decl. ¶ 3, ECF #18; Tom McDonald Decl. ¶ 2, ECF #19. McDonald took pictures of the beaver dam and sent them to Union Pacific representatives. Alex Decl. ¶ 3; Tom Decl. ¶ 2. The beaver dam was removed sometime between March and June 2017, presumably by Union Pacific. Alex Decl. ¶¶ 3, 5; Tom Decl. ¶ 3. Before the dam was removed, it created flood waters and river channels, which caused severe damage to McDonald's property to the tune of $2,500,000. Compl. ¶ 13.

**LEGAL STANDARD**

Pursuant to FRCP 12(b)(6), a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." "A dismissal under rule 12(b)(6) 'may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017) (quoting *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008)).

Additionally, FRCP 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" FRCP 8(a)(2). This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that

---

[1] The pleadings refer to the creek interchangeably as Fairway Creek and Fairview Creek, but it appears Fairview Creek is the correct name. *See* Alex Decl. ¶ 2.

offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 US at 570).

In evaluating a motion to dismiss under FRCP 12(b)(6), the court must accept as true all allegations of material fact and construe them in the light most favorable to the non-moving party. *Parks Sch. of Bus., Inc. v. Symington,* 51 F3d 1480, 1484 (9th Cir. 1995). In addition to the allegations in the complaint, the court may also consider documents whose authenticity no party questions that are attached to, or incorporated by reference into, the complaint, as well as matters capable of judicial notice. *Knievel v. ESPN*, 393 F3d 1068, 1076 (9th Cir. 2005). The court need not accept as true allegations in the complaint that contradict these sources. *Lazy Y Ranch, Ltd., v. Behrens*, 546 F3d 580, 588 (9th Cir. 2008).

**FINDINGS**

**I.    Motion to Dismiss**

In his original complaint, McDonald alleged claims of common-law negligence and breach of a regulatory duty. Compl., ECF #1. In his proposed amended complaint, McDonald asserts a modified claim of common-law negligence, adds a claim of private nuisance, and abandons his claim of breach of a regulatory duty. Mot. to Am. Compl., Ex. 1, ECF #25. For the reasons discussed below, all of McDonald's claims should be dismissed for failure to state a claim.

///

///

///

### A.     Common-Law Negligence

#### 1.     Relevant Law

Under Oregon law, "traditionally, the elements of common-law negligence required a plaintiff to plead and prove that the 'defendant owed the plaintiff a duty, that the defendant breached that duty, and that the breach was the cause-in-fact of some legally cognizable damage to the plaintiff.'" *Chapman v. Mayfield*, 361 P.3d 566, 571 (Or. 2015) (citing *Brennen v. City of Eugene,* 591 P.2d 719, 722 (Or. 1979)) (alteration omitted). However, under Oregon's "contemporary jurisprudence, the traditional duty-breach analysis is subsumed in the concept of general foreseeability, 'unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty.'" *Id.* (quoting *Fazzolari v. Portland School Dist. No. 1J,* 734 P.2d 1326, 1336 (Or. 1987)) (footnote and additional citation omitted).

"Despite that shift, causation-in-fact and the occurrence of legally cognizable harm (damage) remain as elements of any common-law negligence claim." *Id.* (citing *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 83 P.3d 322 (Or. 2004)). "Thus, when a claim for common-law negligence is premised on general principles of foreseeability, the plaintiff must plead and prove that the *defendant's conduct* created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff." *Id.* (citations omitted) (emphasis added).

### B.     Original Theory

In his original complaint, McDonald alleges that the beaver dam created a foreseeable risk of harm in that it "would potentially cause damage to the railroad trestle and/or would cause damage to adjoining properties through flooding, river channels and burrowing by the beavers in

and around the dam." Compl. ¶ 11.  He further asserts that Union Pacific "had a duty to maintain its property, including its right of way across Fairview Creek," and that "this duty included removing the beaver dam within its right of way before the dam caused damage to adjoining properties." *Id.* ¶ 12.  McDonald asserts that, "[o]ver time, the dam did create flood waters, river channels and numerous beaver burrows[,] which have caused severe damage to [McDonald's] property." *Id.* ¶ 13.  McDonald's original theory of liability fails because he cannot establish Union Pacific had a duty to mitigate the activities of beavers.

Beavers are rodents.  *See Journal-Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 459 (Ind. 1999)("Webster's New World Dictionary (3d ed.1988) defines rodent as 'any of a very large order (Rodentia) of gnawing mammals including rats, mice, squirrels, beavers, etc., characterized by constantly growing incisors adapted for gnawing or nibbling[.]'").  Under Oregon law, rodents are a form of predatory animal.  ORS 610.002[2]; OAR 635-050-0050(8).[3] Thus, "[a]ny person . . . possessing or having charge of or dominion over any land . . . which is infested with . . . predatory animals . . . *may* proceed immediately and continue in good faith to control them by poisoning, trapping or other appropriate and effective means."  ORS 610.105 (emphasis added).  However, "in the statutory context, in ordinary usage, "'shall' create[s] a mandatory duty, while 'may' creates only authority to act."  *Friends of the Columbia Gorge, Inc. v. Columbia River Gorge Comm'n*, 212 P.3d 1243, 1249 (Or. 2009) (quoting *Cain v. Rijken*, 717 P.2d 140 (Or. 1986)).  Accordingly, Union Pacific had no statutory obligation to remove the beavers from its property.

---

[2] Under ORS 610.002, rodents are included in a list of "predatory animals."

[3] OAR 635-050-0050 states that "'predatory animals' means coyotes, rabbits and rodents which are or may be destructive to agricultural crops, products and activities."

Moreover, beavers are *ferae naturae*, or wild animals. *Fields v. Wilson*, 207 P.2d 153 (Or. 1949). Wild animals are the property of the state. *Simpson v. Dep't of Fish and Wildlife*, 255 P.3d 565, 572 (Or. App. 2011). Land owners are not liable for the acts of wild animals occurring on their property unless the landowner reduces indigenous wild animals to their possession or control or introduces nonindigenous wild animals into the area. *See Union Pac. R.R. Co. v. Nami*, 498 S.W.3d 890, 897 (Tex. 2016), *reh'g den* (Sept. 23, 2016), *cert. den sub nom. Nami v. Union Pac. R.R. Co.*, 137 S. Ct. 2118 (2017); Comment a, RESTATEMENT (FIRST) OF TORTS § 508 (1938) ("The possession of the land does not carry with it possession of the indigenous wild animals which are upon it. The possessor of the land does not acquire possession of such animals until he has brought them within his control . . . ."). The complaint contains no allegation that Union Pacific reduced the beavers to its possession or control or introduced them to the area.

Thus, Union Pacific had no duty towards McDonald for the harm caused by the beavers or their activities on its right of way on Fairview Creek. Although Oregon law allowed Union Pacific to lethally remove the beavers or otherwise control them, it had no affirmative duty to do so. Moreover, because the beavers are wild animals, Union Pacific is not liable for their actions. Because McDonald failed to plead a cognizable legal theory of common-law negligence in his original complaint, the motion to dismiss should be granted with respect to that claim.

  **C.  Amended Theory—Duty to Remove Obstruction**

In his motion to amend the complaint, McDonald argues that—regardless of how the beaver dam or "obstruction" came about—once it was observed and could foreseeably cause flooding to adjacent properties, Union Pacific had an affirmative duty to remove the obstruction and mitigate flood damage to McDonald's property. Mot. to Am. Compl. 4, ECF #25.

6 – FINDINGS AND RECOMMENDATIONS

Assuming *arguendo* that the court could simply set aside the *ferae naturae* doctrine, which it cannot, McDonald's second theory of negligence also fails as a matter of law because Union Pacific is not liable for harm resulting from natural conditions.

McDonald cites *Schweiger v. Solbeck*, 230 P.2d 195 (Or. 1951), for the "proposition that the negligence of a property owner in relation to a natural obstruction could give rise to a cause of action." Reply ¶ 3, ECF #27. Indeed, *Schweiger* contains the following seemingly favorable language:

> We have held that negligently to permit large quantities of water to be impounded, and, by the breaking of the impounding agency, to be suddenly released, is, from the point of view of legal responsibility, no different in principle from lawfully impounding water and then releasing them suddenly to another's injury.

*Id.* at 202 (citations omitted).

However, the *Schweiger* court's use of the passive voice makes this sentence ambiguous. It could imply, as McDonald argues, that the property owner need only permit the release of water to be liable for negligence, and not that it take some affirmative act to cause the release. Or, it could require some affirmative conduct by the property owner. However, both the facts of *Schweiger* and the four cases it relies on for its holding show that the court's use of passive voice does not mean the actions of the property are unimportant: some affirmative conduct is required to hold a property owner liable for a release of water.

In *Schweiger*, the defendants logged a ravine upstream from the plaintiffs' cabins and left logging debris consisting of limbs, small trees, and brush along the sides and bottom of the ravine. *Id.* at 197. Heavy rains carried a mass of debris onto the plaintiffs' property and destroyed their cabins, and the plaintiffs brought negligence claims. The defendants admitted they conducted a logging operation, but alleged the plaintiffs' losses were caused by excessive

7 – FINDINGS AND RECOMMENDATIONS

rains and a subsequent landslide over which they had no control. *Id.* at 197-98. The operative fact was whether the defendants took some action that made them responsible for the damage: "even assuming that there was a landslide, the negligence of the defendants in permitting an accumulation of logging debris to remain on their land might well have been a cause. . . ." *Id.* at 200. Under "the facts and circumstances as a whole," the court concluded that "a reasonable inference of defendants' negligence was proper." *Id.* at 202.

*Schweiger* cites four cases, which all support the conclusion that some action by the defendant is necessary for there to be liability. In *Allen v. K. P. Timber Co.*, 53 P.2d 29, 30 (Or. 1935), the defendant railroad company constructed a pile-trestle bridge, 250 foot long and 90 feet high, upstream from plaintiff's home. The defendant intended to supplant the trestle bridges by filling in the canyon below with dirt and debris. The defendant filled in 60 feet over five years; however, after two months of exceptionally heavy rainfall, water pooled behind the fill, the fill broke, a large amount of water was released, and the plaintiff died in a resultant mudslide. The court held that the defendant "knew, or by the exercise of reasonable diligence could have known, that the culvert under the said fill became choked [several years before]; that the waters arose very rapidly; [and] that it was necessary to build and maintain a screen around the intake of the culvert to prevent it from choking," but the defendant failed to maintain such a screen. *Id.* at 31.

In *Crawford v. Cobbs & Mitchell Co.*, 257 P. 16, 16 (Or. 1927), the defendant operated a sawmill and maintained a large reservoir for floating logs. When the reservoir began overflowing, the defendant raised the floodgates, causing the river below to overflow, thereby damaging the plaintiff's downstream property and killing his livestock. The court held that the "jury had a right to infer from the evidence that the defendant released the impounded waters of

its artificial lake for the purpose of lowering the waters of the reservoir, and that, in accomplishing its purpose, it acted negligently, and to the injury of plaintiff." *Id.* at 18.

In both *Kaylor v. Recla*, 84 P.2d 495, 496 (Or. 1938), and *Emison v. Owyhee Ditch Co.*, 62 P. 13, 14 (Or. 1900), the defendants built and used irrigation ditches but failed to control seepage, over flow, and waste water, which saturated the adjacent plaintiffs' farm lands destroying their alfalfa crops. The courts reasoned the defendants had a duty to maintain their irrigation ditches in a manner that would not cause harm to adjacent properties.

These cases demonstrate that under Oregon law, "the plaintiff must plead and prove that the *defendant's conduct* created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff." *Chapman*, 361 P.3d at 572 (emphasis added). In each of the cases discussed above, the defendants took some action that created the risk of harm: logging and leaving debris in a ravine, failing to maintain a screen, literally opening the floodgates, or constructing and operating irrigation ditches. Suffice it to say, a "possessor of land . . . [is not] liable for physical harm caused to others outside of the land by a natural condition of the land." RESTATEMENT (SECOND) OF TORTS § 363.

Here, McDonald alleges that "[o]ver the years, a large obstruction of mud, logs and other debris accumulated directly under the trestle and within the right of way of Union Pacific. Although Union Pacific was able to observe this obstruction, Union Pacific did nothing about the obstruction." Mot. to Am. Compl. 3-4, ECF #25. However, McDonald does not allege that Union Pacific took any action to create the obstruction. Thus, McDonald's second theory of common-law negligence fails as a matter of law.

///

9 – FINDINGS AND RECOMMENDATIONS

## II.   Second Claim: Private Nuisance

McDonald also proposes to amend his complaint to add a claim that "Union Pacific created a private nuisance . . . by permitting a large obstruction to be maintained in Fairview Creek within its right of way, which eventually caused flooding on the plaintiff's property."[4] Mot. to Am. Comp. 5, ECF #25.  This claim also fails as a matter of law.

"A private nuisance is an unreasonable non-trespassory interference with another's private use and enjoyment of land."  *Mark v. State ex rel. Dep't of Fish and Wildlife*, 84 P.3d 155, 161 (Or. App. 2004) (citation omitted).

> Owners of land who do not themselves engage in activity constituting a nuisance may nevertheless be liable for the acts of *third parties* that create a nuisance on their land if they both know that the activity is being carried on and will involve an unreasonable risk of causing the nuisance and consent to the activity or fail to exercise reasonable care to prevent it.

*Id.* (internal citations and quotations omitted) (emphasis added).  However, "a possessor of land is not liable to persons outside the land for a nuisance resulting solely from a natural condition of the land."  RESTATEMENT (SECOND) OF TORTS § 840 (1979).  Otherwise stated, "a nuisance cannot arise from the neglect of one to remove that which exists or arises from purely natural causes."  *Merriam v. McConnell,* 175 N.E.2d 293, 296 (Ill. App. 1961).  Property owners "have no affirmative duty to remedy conditions of a purely natural origin upon their property, in this instance the work of wildlife, even though such conditions may cause inconvenience or even damage to the property of neighbors."  *Frank v. Garrison*, 584 N.Y.S.2d 217, 218 (N.Y.A.D. 1992); *see also Lichtman v. Nadler,* 426 N.Y.S.2d 628, 629 (N.Y.A.D. 1980) ("[A] land owner is

---

[4] Specifically, the proposed amended complaint alleges: "The allowance of a large obstruction in Fairway Creek within the right of way of Union Pacific constituted a nuisance" and "[a]s a result of defendant's actions to allow the nuisance to be maintained, which caused flooding on plaintiff's property, defendant is liable to plaintiff for the damages caused by said flooding." Mot. To Amend Compl., Ex. 1, at 5.

10 – FINDINGS AND RECOMMENDATIONS

under no affirmative duty to remedy conditions of purely natural origin upon his land even though they are dangerous or inconvenient to his neighbors.").

The facts in *Frank* are similar to those in this case: the plaintiff's property was damaged when a beaver dam on the defendant's property caused flooding upstream. The *Frank* court affirmed the trial court's dismissal for failure to state a claim. *Id.* The fact that McDonald's property is located in an urban or suburban area is inapposite. *See Lichtman*, 426 N.Y.S.2d at 629-30 ("We find nothing in the case law or in the texts supporting the dissenters' view that the traditional rule has been altered or that any exception has been made in this jurisdiction as to its application in urban or suburban areas.").

*Merriam* is also instructive here. There, the defendant grew box elder trees that were infested annually by "ugly, black and red, three-quarter inch long bugs." 175 N.E.2d at 294. The plaintiff complained that the bugs migrated from the defendant's trees to his dwelling and among other things, impaired the value of his property. *Id.* The plaintiff asked the court to order the defendant to remove the trees, but the defendant refused. To be a private nuisance, the court held "[t]he law is that defendants themselves would have to be guilty of some carelessness, negligence or willfulness in bringing, or helping to bring, about a harmful condition in order to entitle plaintiff to the relief sought." *Id.* at 296-97.

Here, because the beaver dam or obstruction, however defined, arose from natural causes, Union Pacific cannot be liable under a theory of private nuisance. Union Pacific took no affirmative action that contributed to the existence of the obstruction; it arose from natural causes. "Ill results, however extensive or serious, [that] flow from natural causes, cannot become a nuisance, even though the person upon whose premises the cause exists could remove it with little trouble and expense." *Id.* at 296.

McDonald's reliance on *Mark v. State Dep. Fish and Wildlife*, 84 P.3d 155, 161 (Or. App. 2004), is unavailing. In *Mark*, a state agency designated a beach area next to the plaintiff's property as "nudity permitted." 84 P.3d at 159. The court found the state failed to adequately control the conduct of its invitees, who engaged in uncontrolled and extensive nudity including explicit sexual conduct in plain view of the plaintiffs. *Id.* at 162. *Mark* is distinguishable in that the harm was caused by the defendant's invitees. Moreover, the state agency had taken the affirmative act of designating the beach area as "nudity permitted." McDonald has not alleged that Union Pacific helped bring about the obstruction, or that it in any way attracted the beavers or otherwise contributed to the dam's construction.

For these reasons, McDonald's private nuisance claim fails as a matter of law and likewise should be dismissed.

### III. Breach of Regulatory Duty Claim

In the second claim of his original complaint, McDonald alleged a claim of breach of regulatory duty. In his response to the motion to dismiss, he conceded this claim should be dismissed. Response 3, ECF #16.

### IV. Plaintiff's motion to amend should be denied.

Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires." However, leave to amend "is not to be granted automatically." *Jackson v. Bank of Hawaii,* 902 F.2d 1385, 1387 (9th Cir. 1990) (emphasis added). The court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, . . . [and] futility of amendment.'" *Carvalho v. Equifax Info.*

*Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alterations in original).

Both the claims McDonald asserted in his original complaint and in his motion to amend fail as a matter of law because Union Pacific is not liable for the harm resulting from beavers or natural occurrences on its right of way.  McDonald has been given one opportunity to amend his complaint, but has failed to assert a colorable claim for relief.  Additional amendment is thus futile and leave to amend should be denied.

## RECOMMENDATION

Union Pacific's motion to dismiss (ECF #14) should be GRANTED, plaintiff's motion to amend the complaint (ECF #25) should be DENIED, and this case should be dismissed with prejudice.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due Thursday, April 26, 2018.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

///

///

///

///

///

13 – FINDINGS AND RECOMMENDATIONS

## NOTICE

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED  April 12, 2018.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge
